## Rosson *vs* Anderson, &c.

CHANCERY.

9m 423
102  530

ERROR TO THE JESSAMINE CIRCUIT.

*Deeds of gift. Trusts. Lapse of time. Jurisdiction.*

JUDGE SIMPSON delivered the opinion of the Court.

*Case 95.*

*June 14.*

Case stated.

In 1803, Seth Thruston executed a deed of trust to James Fletcher, conveying to the donor's three daughters, a number of slaves for their support and tuition, until they arrived at age or married, and then to be equally divided between them.

The trustee, Fletcher, having never accepted the trust, the slaves all remained in the possession of the donor until the year 1822, when Alexander Wake, who had intermarried with one of the daughters, and whose wife had died, brought a suit in chancery in the double character of husband and administrator of his deceased wife, claiming one third of the slaves under the deed.

Rosson
*vs*
Anderson.

In that suit, Thruston, the donor, who was a defendant, contended that the deed not having been accepted by the trustee, the title of the slaves still remained in him—that he had never delivered the deed, and its execution was therefore defective, and that he had disregarded the conveyance, and held and claimed the slaves as his own. He denied that his children had any right to the slaves under the deed, and resisted the complainant's claim.

Another one of the daughters had, when that suit was brought, married William Anderson, and the third had attained the age of twenty one. Anderson and wife, and the unmarried daughter, were made defendants, and a division of the slaves asked for by the complainant, the period having arrived, when according to the provisions of the deed, a division was to be made.

Anderson and the unmarried daughter both answered, admitting the invalidity of the deed, the right of the donor to the slaves, disclaiming any interest or right themselves, and denying the complainant's right to any of the slaves in contest.

In 1826, a decree was rendered in favor of Wake, for one third of the slaves contained in the deed of trust, which were assigned to him; and that decree was affirmed by this Court.

If that decree can be sustained as correct, it must be upon the ground that the donor having remained in the possession of the slaves after executing the deed of conveyance, and his daughters, who were then infants, having continued to reside with him until they were married, and the trustee named in the deed having refused to act, he was properly regarded as a trustee for his children, it not appearing that he had held the possession of the slaves in any other character. The time fixed by the deed for the division of the slaves between the daughters, had arrived only a short time before the suit was brought by Wake, so that there was no obstacle growing out of the lapse of time, to granting the relief sought by the complainant in that suit.

A father made a
deed of trust of
slaves for the

Anderson and the unmarried daughter, having in their answers, substantially repudiated the deed of trust,

and disclaimed all right under it, the residue being two thirds of the slaves, were left in the possession of Thruston, who continued to hold, use and claim them as his own, until this suit was instituted in 1841, about thirty eight years after the execution of the conveyance, and fifteen after the decree in favor of Wake.

Anderson having died, leaving only one child living at the time of his death, this suit was brought by that child, who is a daughter, against her grand father, Seth Thruston, for one half of the slaves which were left in his possession at the time the decree was rendered in favor of Wake. Her mother, and Rosson, with whom she had intermarried after the death of Anderson, her first husband, together with Wake, and her other sister, and her two children by James Lindsey, her first husband, who had died, were all made defendants; she also made the executors of her father defendants, and alleged that the debts against the estate had been all paid off and discharged.

Seth Thruston and his wife, the grand mother of the complainant, who was also made a defendant, filed their answer, claiming the slaves as their own, denying the complainant's right, relying upon the disclaimer of complainant's father in the suit of Wake, their own adverse possession since that time for more than five years, and pleading the statute of limitations in bar of the complainant's claim.

It is very questionable whether Anderson, after the attitude assumed by him in the suit of Wake, and his admission of the invalidity of the deed of trust, should not be considered as having been thereby estopped, even in a contest with the donor, to assert any claim under the deed to the slaves contained in it. If he had surrendered all his right to the slaves, or placed himself in a position by which he was disabled to assert such right successfully, it would follow, that the complainant, who claims under him, could not succeed in this suit.

But whether or not this effect should result from the attitude assumed by him in that suit, it is very clear that the statute of limitations is a complete bar to the complainant's claim.

Rosson
vs
Anderson.

use of his children, the Trustee declined to accept the trust, and after the lapse of about 19 years, one of the *cestui que trusts* obtained a decree for her part of the slaves; in that suit the donor resisted and denied the validity of the deed, the other *cestui que trusts* denied it also.— Subsequent after the lapse of another period of 19 years the heirs of the other two *cestui que trusts* bring this suit for a division of the slaves —Held that they were barred by lapse of time, if not estopped by the former answer of their ancestor.

Rosson
vs
Anderson.

The holding in
trust of slaves
by a father open-
ly denied, &c.,
no suit for 15
years, and when
suit might have
been brought—
Held a bar by
lapse of time to
any suit for the
money.

The answer of the donor in the suit of Wake, con-
tained an explicit denial that he held the possession of
the slaves for the benefit of his daughters, the trust that
previously existed was openly and fully renounced, and
all the parties interested, being also parties to the suit,
were fully apprized that his possession was adverse.
This adverse possession continued for fifteen years be-
fore this suit was commenced.

It is contended, however, that the complainant hav-
ing been an infant when her father died, and she having
labored under that disability until this suit was institu-
ted, that her claim is exempt from the operation of the
statute.

Where the per-
sonal represent-
ative has the
right of action
and permits a
bar to take place
by lapse of time
the heir is bound
by his laches.

There are two reasons, however, why the complain-
ant does not come within any exception contained in
the statute. In the first place, the right of action upon
the death of her father, vested in his executors, and as
more than five years had elapsed after they had qualifi-
ed, before this suit was brought, time operated as a bar
against them. The heir can occupy no more favorable
position than the personal representatives would, if the
suit had been brought by them, and as they would have
been barred by the lapse of time, the effect must be
the same against the heir.

Where the stat-
ute begins it runs
against the an-
cestor in bar of
personal action;
it continues to
run against the
heir——infancy
notwithstanding.
Not so in respect
of lands.    (3
Monroe, 39.)

In the second place, it is apparent that the complain-
ant's right to relief, if any, accrued to her ancestor in
his lifetime, and of course the statute must have com-
menced running against him, and having commenced
running in his lifetime, it continued to run after his
death, notwithstanding the subsequent disability of the
complainant. In this respect there is a difference, un-
der the statute of limitation, between rights to personal
property, and rights of entry to land. Both of these
propositions are fully sustained by the case of *Haddix's
heirs* vs *Davison,* (3 *Monroe,* 39.)

This view being decisive against the complainant's
right to relief, renders it unnecessary to investigate the
other questions which have been presented, or to de-
cide, whether under the circumstances attending its ex-
ecution, any right passed under the deed of trust, which
a Court of chancery would enforce, the deed having

been voluntary, and not founded on a valuable consideration. But as Thruston, the donor, died during the pendency of this suit, and as the complainant is entitled to a portion of his estate, she may, although she cannot sustain her claim to the slaves under the deed of trust, amend the pleadings, if she choose to do so, so as to have her interest in her grand father's estate decreed to her, making the necessary parties for that purpose, if they are not all now before the Court.

Wherefore, the decree is reversed, and cause remanded for further proceedings consistent with this opinion.

*J. & W. L. Harlan and Guthrie* for plaintiff; *Wintersmith and Spillman* for defendants.